

Seattle - New York
www.afnlegal.com

July 29, 2021

Honorable Alison J. Nathan
United States District Court,
Southern District of New York
40 Foley Square, Courtroom 906
New York, NY 10007

**Re:** *GBM Global Holding Company Limited v. Certain Unidentified Individuals.* **1:21-cv-06284-AJN– Letter Motion to Maintain <u>Schedule B</u> Under Seal**

Dear Judge Nathan:

In response to the Court's order dated July 28, 2021, Petitioner GBM Global Holding Company Limited ("**Petitioner**") writes to confirm that <u>Schedule A</u> has been filed on the public docket along with Petitioner's affidavit of service. However, Petitioner respectfully requests that <u>Schedule B</u> be maintained under seal.

### I.     Factual Background

Schedule B sets out the various third-party crypto exchanges that were recipients of the stolen cryptocurrencies and the respective transaction IDs that record each deposit so far identified. As explained in Mr. Wei Li's supplemental declaration, transaction IDs record the amount and the to and from wallet addresses of any transaction. Wei Li Suppl. Decl. ¶ 5. However, the "addresses" are made up of code, and do not identify the underlying owner of the wallet. *Id.* ¶¶ 6-9. While some exchanges' wallet addresses can be identified through public sources, Petitioner has not publicly disclosed its own wallet address.

Here, Schedule B: (i) displays transaction IDs related to several, highly liquid global cryptocurrencies with billion-dollar-plus market caps; and (ii) associates such transaction IDs with half a dozen major international cryptocurrency exchanges of systemically-important size,



including the largest in the world by trading volume—Binance. That information, including the identification of exchange wallets, was generated through GBM's extensive, proprietary tracing efforts, and certain of the wallet identifications were obtained confidentially through private industry relationships. Wei Li Suppl. Decl. ¶¶ 7-8.

Accordingly, if Schedule B is publicly disclosed, the world will immediately know the current deposit "hot" wallets of several major global exchanges for several major cryptocurrencies, where tens or hundreds of thousands of users' funds are pooled to effectuate trading. GBM's competitors will also be able to deduce the losses that its exchange sustained refunding users for transactions they made with Defendants. Finally, GBM is already a hacking target, publicly revealing its trading wallet addresses for multiple currencies and their accompanying transaction histories will provide a wealth of information to other hackers—even if only for malicious, denial of service attacks.

To illustrate with an example, all centralized exchanges conduct their "collections" of user deposits into pooled accounts at unique, proprietary intervals. If a malicious acter were to know these intervals (which can be discerned through the Schedule B txids), they could, with ease, time numerous small transactions to coincide with the wallet's collection activities, overwhelm the blockchain's ability to process the transactions, and thus grind an exchange's operations to a halt. Such information can easily be used for, among other things, extortion.

**II.     Argument**

In support of Petitioner's request to keep Schedule B sealed, Petitioner incorporates the grounds stated in its letter motion dated July 26, 2021 (Dkt. 4), and respectfully submits the following argument and caselaw.



***First***, Schedule B is a comprehensive list of transaction IDs associated with GBM and certain third-party exchanges—revealing their pooled wallets for major currencies. As Petitioner's technical lead stated, Petitioner's identified the exchanges behind the wallets using proprietary resources and confidential industry relationships. *Id.* at ¶¶ 5-8. This was the only method to identify the exchanges with certainty, since, as stated in Petitioner's letter concerning notice to the exchanges, dated July 26, 2021, some of them do not even provide public contact details.  Dkt. 7.

The secrecy is understandable, as hacking is rampant in the industry—a scourge that all exchanges are constantly weary of.  Here, Schedule B contains transaction IDs akin to bank account numbers that can also, with one click, show both the GBM and third-party exchanges' accounts' entire transaction histories. Maintaining confidentiality over such highly sensitive financial information, some of which were disclosed on a friendly, "need to know" basis, is therefore of utmost concern.

There is ample legal basis for sealing here. This Court's individual rules permit redactions of "financial account numbers," "individual financial information," and "proprietary or trade secret information." *See* Individual Civil Practice Rule 4(A).  Here, though the information in Schedule B appears abstruse at a glance, they can reveal far more financial information than average bank account numbers, and in fact spans all three of the Rule 4(A) categories.

Indeed, because some of the information on Schedule B was obtained confidentially, disclosure may harm Petitioner's industry standing and relationships.  *See PDV Sweeny, Inc. v ConocoPhillips Co.*, 2014 WL 4979316, at *3 (SDNY Oct. 6, 2014) ("the Court concludes that sealing is appropriate with respect to those documents on the basis of their containing sensitive commercial information affecting the parties' ongoing relationship").



Finally, Schedule B contains transaction IDs that reveal trade secrets about exchange operations, which information Petitioner obtained through confidential means. This also warrants sealing. *See Rubik's Brand Ltd. v Flambeau, Inc.*, 2021 WL 1085338, at *1 (S.D.N.Y. Mar. 22, 2021) (sealing documents that "contain proprietary and commercially sensitive information"); *GoSMiLE, Inc. v Dr. Jonathan Levine, D.M.D. P.C.*, 769 F Supp 2d 630, 649-650 (S.D.N.Y. 2011) (sealing documents containing "highly proprietary material concerning … strategies, product development, costs and budgeting.")

***Secondly***, using Schedule B, anyone will be able to piece together the damage that Petitioner suffered to make whole its customers who transacted with Defendants. Thus, Schedule B contains information effectively showing how much GBM is willing to reimburse customers who are victimized by hacks. Knowledge of this fact could: (i) make GBM, or worse, its customers, more attractive hacking targets; and (ii) cause alarm, discourage users, and supply ammunition for competitors—thus harming GBM's business.

Courts in the Second Circuit "routinely seal documents to prevent the disclosure of a party's confidential or competitively sensitive business information." *Regeneron Pharm., Inc. v Novartis Pharma AG*, 2021 WL 243943, at *1 (S.D.N.Y. Jan. 25, 2021). Given the attendant negative consequences of disclosure set forth above, the information reflecting financial loss warrants sealing. *See also AngioDynamics, Inc. v. C.R. Bard, Inc.*, 2021 WL 776701, at *6 (N.D.N.Y. Mar. 1, 2021) (redacting "competitively sensitive pricing, sales and ***revenue*** information.") (emphasis added); *Re: Capri Sun GmbH v Am. Beverage Corp.*, 2021 WL 2291019, at *2 (SDNY June 4, 2021) ("Confidential corporate ***financial documents*** and budgets are among those documents frequently recognized by this Court as appropriately sealed.") (emphasis added);

4


*AH Aero Serv., LLC v Heber City*, 2020 WL 6135819, at *3 (D Utah Oct. 19, 2020) (sealing ***profit and loss*** statements because they "are precisely the type of sensitive business information that should be sealed and kept confidential…"); *SMD Software, Inc. v EMove, Inc.*, 2011 WL 3652754, at *3 (E.D.N.C. Aug. 18, 2011) (sealing profit and loss statements which "contain business information potentially harmful to their ***competitive standing.***") (emphasis added); *Louis Vuitton Malletier S.A. v Sunny Mdse. Corp.*, 97 F Supp 3d 485, 511 (S.D.N.Y. 2015) (redacting "internal business documents" and "***financial*** information" of a closed business whose legitimate privacy interests are implicated) (emphasis added); *State Farm Mut. Auto. Ins. Co. v Elite Health Centers, Inc.*, 2018 WL 3649554, at *4 (ED Mich Aug. 1, 2018) (sealing profit and loss statements)

Respectfully submitted,

AFN Law PLLC

  s/ *Angus F. Ni*
Angus F. Ni

41 Madison Ave, 31st Floor
New York, NY 10010
Phone: (646) 453-7294

*Counsel for Petitioner*