UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GBM Global Holding Company Limited<br><br>     *Petitioner*,<br><br> v.<br><br>The Unidentified Individuals Listed On Schedule A,<br><br>     *Defendants.* | Case No. 1:21-cv-06284-AJN |

**SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF A PRELIMINARY INJUNCTION**

As directed by the Order extending the temporary restraining order issued on August 9, 2021 (Dkt No. 21), Petitioner GBM Global Holding Company Limited (the "**Petitioner**") respectfully submits this supplemental memorandum of law.

**A. THE ARBITRATION HAS BEEN FILED IN NEW YORK**

Petitioner has filed an arbitration with the American Arbitration Association in New York, New York ("**AAA**") on August 12, 2021. Ni Supp. Decl. ¶ 2; Ex. 1 (Notice of Arbitration); Ex. 2 (AAA's email confirmation of filing); Ex 3 (Arbitration demand e-mail to Defendants).

In the arbitration, Petitioner asserts claims for breach of contract and fraud. Ni Supp. Decl. ¶ 3; Ex. 1, at 5-6. The Petitioner seeks an award ordering the turnover of the funds and cryptocurrencies defrauded by Defendants and traced to certain third-party exchanges. *Id*. On the same day, the Petitioner served on Defendants a demand for arbitration by sending to their registered email addresses: (i) a copy of the notice of arbitration; (ii) the arbitration agreement; and (iii) the applicable American Arbitration Association rules. Ni Supp. Decl. ¶ 4; Ex. 3.

1

B.  **THE ARBITRATION AGREEMENT AND THE ONGOING ABITRATION SATISFIES THE REQUIREMENTS OF THE NEW YORK CONVENTION**

"The Convention and the implementing provisions of the FAA set forth four basic requirements for enforcement of arbitration agreements under the Convention: (1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope." *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999) ("*Smith/Enron*")

1.  **Requirements One, Three, And Four Are Met**

Here, requirements one, three, and four are indisputably satisfied.

***First prong (written agreement)***: each Defendant has entered into a ***written*** agreement when registering their accounts at BitMart (the "**User Agreement**"). Clause 10.3 of the User Agreement provides that "any dispute arising out of or relating to this Agreement or the BitMart Services, including, without limitation, federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation, or any other legal theory, shall be resolved through binding arbitration, on an individual basis (the 'Arbitration Agreement')." Ex. 1, at 2.

***Third prong ("considered commercial")***: as set forth in the Supplemental Memorandum of Law in Support of the TRO Motion, "courts have liberally held arbitrations to be 'commercial' and thus governed by the Convention where the 'relationship' that is the subject matter of the arbitration merely ***implicates*** interstate or international commerce." Dkt No. 8, at 4-5 (emphasis original); *see also Belize Soc. Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 104 (D.C. Cir. 2015) ("Section 2 in turn includes contracts 'evidencing a transaction involving commerce,' 9 U.S.C. § 2—a term the Supreme Court has interpreted as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of

Congress' Commerce Clause power.") This matter concerns cryptocurrency trades, which "have [been] found [to] implicate interstate 'commerce' by nature." Dkt. 8, at 5 (citation omitted).

The *fourth prong (not entirely domestic)* is also not at issue as the Petitioner is a company incorporated in Cayman Islands and operates transnationally. *Id*. 6-7; *see also Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,* 126 F.3d 15, 19 (2d Cir.1997) (holding that where arbitral agreement or award "involv[es] parties domiciled or having their principal place of business outside [the U.S.]," that agreement or award falls within scope of Convention.)

### 2. Requirement Two—Territoriality—Is Also Satisfied

The remaining requirement, that the arbitration agreement "must provide for arbitration in the territory of a signatory of the convention," requires additional analysis. But, as set forth below, it is also satisfied for three independently dispositive reasons.

*First*, Clause 10.3 of the User Agreement provides that "[t]he arbitration … shall take place in the county or parish in which you reside, or another mutually agreeable location, in the English language." Ex. 1, at 29. Although Defendants remain unidentified, Petitioner's exchange maintains a record of the incoming IP address of the computer registering every account. Ni Supp. Decl. ¶ 5. The record shows that all Defendants registered and used their accounts in NY Convention signatory countries. Ex. 4.[1]

Assuming that these are the countries where Defendants reside, if Defendants were to reject Petitioner's choice of New York as the seat of arbitration, the arbitration "provided for" in the User Agreement can only occur in signatory countries. This satisfies the "territoriality" requirement.

---

[1] The record shows that Defendants' IP addresses are located in Armenia, Canada, Russia, Republic of Moldova, Ukraine, United Kingdom, and Uzbekistan, all of which are contracting states to the New York Convention. *See* the official website of the Convention (https://www.newyorkconvention.org/countries).

*Second*, the "territoriality" requirement is also satisfied because the arbitration is ongoing in New York, and the arbitrator is empowered to decide whether the current seat of arbitration is a "mutually agreeable location" in accordance with the broad arbitration clause.  The Court should accordingly defer to the arbitrator.

The Arbitration Clause, Clause 10.3 of the User Agreement, expressly provides that "[t]his Arbitration Agreement includes, without limitation, disputes ***arising out of or related to*** the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, ***scope***, or validity of the Arbitration Agreement or ***any portion*** of the Arbitration Agreement.  All such matters ***shall be decided by an arbitrator and not by a court or judge***." Ex. 1, at 28 (emphasis added).

Broad arbitration clauses such as these have been found to invest the arbitrator with the authority to determine the proper seat of arbitration. *See Matter of Arb. Between U.S. Lines, Inc. & Liverpool & London S.S. Prot. & Indem. Ass'n, Ltd.*, 833 F. Supp. 350 (S.D.N.Y. 1993) ("The court concludes that the issue of the venue for the arbitration arises out of the parties' agreement to submit to arbitration any 'difference or dispute between the Association and any member touching any loss, claim, or contribution.' …Thus, the ***issue of venue is itself*** a proper issue for resolution by arbitration.") (emphasis added); *see also Prudential Sec., Inc. (PSI) v. Thomas*, 793 F. Supp. 764 (W.D. Tenn. 1992) ("[t]he controversy concerning the venue of the arbitration is clearly one that relates to the account and to the parties' agreement and therefore is one that should be settled by the arbitration association" where clause provided that "any controversy ***arising out of or relating to*** my account ... shall be settled by arbitration [in accordance with AAA rules].")

Indeed, the arbitration clause also requires application of the AAA consumer rules, Rule 11 of those rules provide for the AAA or the appointed arbitrator to "fix[] [the] locale" of the

4

arbitration where the parties do not agree.  Ex. 5, at 16.  Consistent with these rules, in the ongoing arbitration, Petitioner will ask the arbitrator to decide the issue of venue.  If Defendants default, Petitioner will ask that the defaults constitute Defendants' acquiescence to Petitioner's choice of venue.[2]  Even if Defendants do appear, do dispute venue, and succeed, the only alternatives permitted by the arbitration agreement are the countries where they reside—which are all New York Convention signatories.

In sum, given that the arbitrator is empowered to decide the issue and any outcome would place the arbitration within the territory of a NY convention signatory, the territoriality requirement is met, and indeed, moot. *Catanzano v. Wing*, 277 F.3d 99, 107 (2d Cir. 2001) ("The mootness doctrine … requires that federal courts may not adjudicate matters that no longer present an actual dispute between parties.")

***Third***, and relatedly, the fact that the arbitration is already ongoing in the territory of a signatory country is dispositive of the "territoriality" requirement. In *Seed Holdings, Inc. v. Jiffy Int'l AS*, 5 F. Supp. 3d 565, 576 (S.D.N.Y. 2014) (Koeltl J.), the defendant objected to the NY convention enforceability of an arbitration award because the arbitration agreement pursuant to which the award was rendered, far from "providing for" arbitration in the territory of a NY Convention signatory state, had no venue provision whatsoever.  Despite this, the Court found the territoriality objection to be "without merit because it is plain that the … proceeding occurred in the United States, a signatory country." *Id.*

---

[2] Pursuant to the applicable AAA rules, "[a] party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim … that gives rise to the objection." Ex. 5, Rule 14(c). "If no answer is filed within 14 calendar days, the AAA will assume that the respondent does not agree with the claim filed by the claimant. The case will move forward after 14 days regardless of whether an answer is filed." *Id*. Rule 2(e). Moreover, "***[t]he arbitration may proceed even if any party or representative is absent***, so long as proper notice was given and that party or representative fails to appear …" *Id*. Rule 39 (emphasis added).

This is because the requirement is rooted in the practical desire to ensure reciprocity of award enforcement rather than a formalistic demand for express identification of a locality. As the *Seed Holdings* court explained, "[t]he territory requirement in factor two has its genesis in the language of Article I of the Convention, which provides that 'any State may on the basis of reciprocity declare that it will apply the Convention to the recognition and enforcement of awards made only in the territory of another Contracting State.'" *Id*. The United States, in entering into the convention, did adopt the reciprocity reservation—leading to the territoriality requirement. *Id.*

In light of this rationale, "the concern underlying the territory requirement in factor two— namely, that the Convention not be applied to compel arbitrations that ***ultimately do not occur*** in the territory of a signatory country—is not present when an arbitration has already occurred in the territory of a signatory country." *Id.* (emphasis added).

The only difference between *Seed Holdings* and this case is that this arbitration ***is occurring*** in a signatory country—but the rationale for the Court to exercise jurisdiction is the same—particularly given that the arbitration is actually ongoing in the U.S., meaning that the reciprocity concern is not even at issue.[3]

Indeed, dovetailing with the above, first two arguments concerning territoriality, the reciprocity concern is also not present in circumstances where the only countries that could be host under the agreement are signatories. *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 644, fn. 7 (S.D.N.Y. 2011) (citing *Smith/Enron*'s four requirements and stating that "we are … satisfied the Convention applies and that there exists jurisdiction under Chapter 2 of the FAA" even where the

---

[3] Notably, the reciprocity reservation, first made by the United States upon accession to the NY Convention in 1958, has had its effect in the intervening 63 years, and is quickly becoming irrelevant. Indeed, with the accession of Belize earlier this year, the list of non-contracting states has been whittled down to either pariah states who are excluded from international commerce, or states which, by dint of war, tiny size, or extreme underdevelopment, are effectively not participants. *See* Convention on the Recognition and Enforcement of Foreign Arbitral Awards - Wikipedia (last accessed August 14, 2021)

6

"Agreements ***do not actually specify an arbitral forum***, [but] the parties … appear to [assume] any arbitration … is to occur in Kuwait.") (emphasis added) (Buchwald. J.)

Indeed, though this court is not being asked to do so, courts will compel arbitration under the NY convention even where the underlying arbitration agreement does not *explicitly* "provide for" arbitration in a signatory country. *See e.g. Control Screening LLC v. Tech. Application & Prod. Co.*, 687 F.3d 163, 171 (3d Cir. 2012) (affirming compelling of arbitration within the district pursuant to the NY convention where the arbitration agreement's venue provision was found null and void, reasoning that where Chapter 2, § 206 of the FAA does not apply, Chapter 1, § 4, providing for arbitration "within the district," steps in as authorized by § 208.); *see also Jain v. de Mere*, 51 F.3d 686, 690 (7th Cir. 1995) ("Where, however, an arbitration agreement contains no provision for location, § 4 would supplement § 206 by giving a court the ability to compel arbitration in its own district.").

As these cases show, *Smith/Enron*'s requirement that arbitration agreements "provide for" arbitration in the territory of a signatory should not be read as requiring express provision. Instead, where the intent of the territoriality requirement would not be breached, courts have not demanded express identification of a locale in the agreement. Were it otherwise, every agreement that does not explicitly identify a NY Convention signatory would be unenforceable under the NY Convention. As such, the territoriality requirement should be applied in the negative: certainly, explicit agreements to arbitrate in non-signatory territory are excluded. But, where the agreement does not specify, but allows for arbitration within a signatory, and the circumstances show that the arbitration will indeed occur within one, the requirement is satisfied. Here, the arbitration already ongoing in a signatory state, and the only alternatives permitted by the language of the arbitration agreement are also signatories. The reciprocity concern is not present.

## **CONCLUSION**

For the foregoing reasons, the Court should preside and issue a preliminary injunction.

Dated: August 16, 2021

                                          **AFN Law PLLC**

                                          by: _____

                                          Angus F. Ni
                                          41 Madison Ave, 31st Floor,
                                          New York, NY 10017
                                          Phone: (646) 453-7294
                                          angus@afnlegal.com

                                          *Attorneys for the Petitioner*