**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

GBM Global Holding Company Limited,

Petitioner,

v.

91 Individuals Attached To Schedule A,

Respondents.

Case No. 1:21-cv-06284

**MOTION TO CONFIRM ARBITRATION AWARD**

**AFN Law PLLC**
Angus F. Ni
41 Madison Ave, 31st Floor,
New York, NY 10010
(646) 453-7294
angus@afnlegal.com

*Attorney for Petitioner*

Petitioner GBM Global Holding Company Limited ("GBM" or "Petitioner"), moves pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*, which implements the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") to confirm an arbitration award rendered on May 2, 2022 against certain individuals ("Respondents," and collectively with GBM, the "Parties").

## INTRODUCTION

The arbitration was conducted under the Consumer Arbitration Rules of the American Arbitration Association ("AAA") in AAA Case No. 01-21-0016-1249 (the "Arbitration"). The seat of the Arbitration was New York City, New York. The Claimant and Respondents in the arbitration are identical to the Petitioner and Respondents in this action.

Following written briefing by Petitioner in the arbitration, and with Respondents having failed to appear after due notice, the Arbitrator, Dani Schwartz, issued the Final Award on May 2, 2022, and transmitted it to the Parties on May 3, 2022. A true and correct copy of the Final Award is attached hereto as **Exhibit 1** and a true and correct copy of the AAA transmittal cover letter for the Final Award, sent to all Parties, is attached hereto as **Exhibit 2**. Under Section 207 of the FAA, this Court "shall confirm" the Final Award unless it finds one of the grounds for refusal or deferral of confirmation specified in the Convention. Here, the Final Award is final and enforceable under the FAA and the Convention. As there are no grounds to refuse or defer recognition or enforcement of the Award, the Award should be confirmed.

## PARTIES

Petitioner is a corporation organized under the laws of Cayman Islands. It is the owner/operator of a cryptocurrency exchange.

Respondents, the individuals listed in Schedule A to the petition for an injunction in aid of arbitration (Dkt. 2), are individuals who were registered users of Petitioner's cryptocurrency exchange.

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

***The Hack underlying the arbitration.*** As the arbitrator summarized:

> Claimant is the owner/operator of a cryptocurrency exchange doing business under the name "BitMart." Among the cryptocurrencies traded on the BitMart exchange is Bitcoin Satoshi Vision ("BSV"). The 92 Respondents registered accounts on the BitMart exchange to become users of the exchange. After registering their accounts, in or about July 2021, Respondents carried out a malicious "51% attack" on the BSV blockchain. By briefly taking over the mining, or hashing, power on this blockchain, Respondents were able to implant a trail of sham transactions that resulted in the appearance of Respondents possessing 91,000 authentic BSV tokens. By virtue of Respondents' temporary manipulation of the BSV blockchain, Claimant was duped into treating the sham BSV tokens as authentic, and collectively credited a total of 91,000 authentic BSV tokens into digital wallets linked to Respondents' accounts. Respondents then immediately traded the authentic BSV tokens in their accounts for other cryptocurrencies, totaling in value approximately $6,070,000.00 as of July 10, 2021. …

Ex. 1, at 4-5. Petitioner promptly traced some of the currencies to various cryptocurrency exchanges and sought injunctive relief from this Court. Dkt Nos. 1-25. Through the subsequent preliminary injunction in aid of arbitration ordered by the previously-assigned Judge Nathan, Petitioner "was able to freeze some of Respondents' accounts before Respondents could empty their accounts of all authentic cryptocurrency." Ex. 1, at 5.

As set forth in Petitioner's prior jurisdictional briefing, simultaneous to seeking an injunction to freeze assets, it filed an arbitration with the AAA pursuant to the User Agreement that Respondents entered into when registering as users of the Petitioner's exchange. Dkt. No. 22 ("Supplemental Briefing"), at 1-2.

Following notice, Respondents did not appear in the arbitration. Ex. 1, at 5. The Arbitrator considered Petitioner's briefing, which included affidavits and documentary evidence.

*Id.* The Final Award held that "the preponderance of the evidence establishes that Respondents orchestrated a cyberattack upon Petitioner in order to dupe it into crediting Respondents with authentic BSV tokens in their accounts, Petitioner did so as a result of Respondents' deceptions, and was damaged thereby." *Id.*

The Final Award of May 2, 2022, awarded against the Respondents:

> [J]ointly and severally, damages … to be calculated in United States dollars ("Dollars") at the cryptocurrency-Dollars exchange rate prevailing as of the close of business on the date of this Award. The specific cryptocurrencies (identified by ticker) and withdrawal amounts against which these damages are to be calculated are as follows: BSV 3.07; BTC 10.9946; ETH 218.929; USDC 296,654.277; USDT 693,721.37; XRP 3,926,159.284; ADA 130838.17; DOGE 485; ETC 0.389; HOT 29,912,899; LTC 668.499; MATIC 297,691; XEM 313.94; XLM 969,308.31; and ZEC 0.3487.

*Id.* The May 2, 2022 U.S. dollar prices for each of the cryptocurrencies identified in the Final Award are set forth in **Schedule I**, which schedule follows the signature page of this memorandum, as well as in the accompanying proposed order. Their total U.S. Dollar value as of May 2, 2022 is $5,231,549.42.

## ARGUMENT

### I. The Court Has Jurisdiction And Venue Is Proper

This Court has subject matter jurisdiction over proceedings "falling under the Convention" pursuant to 9 U.S.C. § 203. A nondomestic arbitration award involving one or more foreign parties "falls under the Convention." *See* 9 U.S.C. § 202; *Phoenix Bulk Carriers, Ltd. v. Am. Metals Trading, LLP*, 2013 WL 5863608, at *3 (S.D.N.Y. Oct. 31, 2013) ("Where, as here, arbitration involves at least one foreign entity, the [New York Convention] applies."); *see also Ocean World Lines, Inc. v. Transocean Shipping Transportagentur GesmbH*, 2020 WL 3250734, at *2 (S.D.N.Y. June 16, 2020) (petition governed by the New York Convention because "[i]t concerns an arbitral award arising from a commercial contract, and one of the parties . . . is a foreign entity").

As this Court previously found when issuing the preliminary injunction, the arbitration fell under the Convention. Dkt. 22, at 2-7 (Supplemental jurisdictional briefing concerning the applicability of the Convention); Dkt. 25 (Preliminary Injunction Order).

This Court has personal jurisdiction over Respondents because the parties agreed to a broad arbitration clause in the User Agreement, which among other things stated that "the arbitral decision may be enforced in any court." Dkt 16-4 (User Agreement attached as exhibit D to Motion for Temporary Restraining Order), at 22 (§ 10.3). It is well established "[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d. Cir. 2006) (forum selection clause sufficient to confer personal jurisdiction in action to confirm or vacate award). In the instant case, Respondents consented to enforcing the arbitration award in "any" forum, which includes New York. Moreover, after receiving notice, Respondents did not appear in either this proceeding nor the arbitration, thus waiving personal jurisdiction.

Respondents explicitly agreed to the propriety of venue when they agreed that "the arbitral decision may be enforced in any court." Dkt. 16-4; *see also* 9 U.S.C. § 204 (providing that this action may be brought "in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States.") In any case, venue is proper where the award was made. *See D.H. Blair & Co.*, 462 F.3d, at 105 ("FAA's venue provision must be read permissively to allow a motion to confirm, vacate, or modify an arbitration award either where the award was made or in any district proper under the general venue statute").

## II. The Award Should Be Confirmed

A district court's role in reviewing an arbitration award subject to the New York Convention is "one of the narrowest standards of judicial review in all of American

jurisprudence." *Sykel Enters., Inc. v. Loc. 819*, 1996 WL 1088210, at *2 (E.D.N.Y. Oct. 22, 1996) (citation omitted); *Westerbeke Corp. v. Daihatsu Motor Co., LTD.*, 304 F.3d 200, 220 (2d Cir. 2002) (similar); *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) (judicial review is "strictly limited"). A court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." 9 U.S.C. § 207 (emphasis added); *see also* N.Y. Convention, art. III (Contracting States "shall recognize arbitral awards as binding").

This serves the "emphatic federal policy" in favor of the enforcement of arbitration agreements. *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (citation omitted); *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) ("Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."). Indeed, "[c]onfirmation under the convention is a summary proceeding in nature," as the "district court confirming an arbitration award does little more than give the award the force of a court order." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007). And "the showing required to avoid summary confirmance is high." *Compagnie Noga D'Importation et D'Exportation, S.A. v. Russian Fed'n*, 361 F.3d 676, 683 (2d Cir. 2004) (citation omitted).

Confirmation proceedings are "not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation on grounds for refusal to confirm." *Zeiler*, 500 F.3d at 169. Thus, "[i]f a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed," since "[o]nly this approach to the evidentiary record is consistent with the 'great deference' which must be paid to arbitral panels by federal courts." *Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004).

Under the narrow scope of review applicable to awards falling under the New York Convention, "an arbitration award must be confirmed where the arbitrator's true intent is apparent, or if the grounds for it can be inferred from the facts of the case." *Loew v. Kolb,* 2003 WL 22077454, at *2 (S.D.N.Y. Sept. 8, 2003); *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008) ("There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies.")

In the instant case, the arbitrator has clearly set out the "established … facts" on which Petitioner prevailed. Ex. 1, at 5. Respondents have not appeared to contest the Petitioner's claims before the Arbitrator after notice, and there are no discernible grounds for refusal of recognition and enforcement.

**CONCLUSION**

Petitioner respectfully requests that this Court issue an order confirming the Award.

Respectfully Submitted,

Dated: June 20, 2022

**AFN LAW PLLC**

By: ______________________

Angus F. Ni
41 Madison Ave, 31st Floor,
New York, NY 10010
(646) 453-7294
angus@afnlegal.com

*Attorney for Petitioner*

**Schedule I- Calculation of U.S. Dollar Amounts According to Final Award**

| Currency | Quantity | USD Price | USD Value on May 2, 2022 | Source (hyperlink) |
|---|---|---|---|---|
| BSV | 3.07 | 73.99 | 227.1493 | https://coinmarketcap.com/currencies/bitcoin-sv/markets/ |
| BTC | 10.9946 | 38,529.33 | 423614.5716 | https://coinmarketcap.com/currencies/bitcoin/ |
| ETH | 218.929 | 2,857.41 | 625569.9139 | https://coinmarketcap.com/currencies/ethereum/ |
| USDC | 296654.277 | 1 | 296654.277 | https://coinmarketcap.com/currencies/usd-coin/ |
| USDT | 693721.37 | 1 | 693721.37 | https://coinmarketcap.com/currencies/tether/ |
| XRP | 3926159.284 | 0.6143 | 2411839.648 | https://coinmarketcap.com/currencies/xrp/ |
| ADA | 130838.17 | 0.7815 | 102250.0299 | https://coinmarketcap.com/currencies/cardano/ |
| DOGE | 485 | 0.1309 | 63.4865 | https://coinmarketcap.com/currencies/dogecoin/ |
| ETC | 0.389 | 27.46 | 10.68194 | https://coinmarketcap.com/currencies/ethereum-classic/ |
| HOT | 29912899 | 0.004023 | 120339.5927 | https://coinmarketcap.com/currencies/holo/ |
| LTC | 668.499 | 100.69 | 67311.16431 | https://coinmarketcap.com/currencies/litecoin/ |
| MATIC | 297691 | 1.08 | 321506.28 | https://coinmarketcap.com/currencies/polygon/ |
| XEM | 313.94 | 0.09215 | 28.929571 | https://coinmarketcap.com/currencies/nem/ |
| XLM | 969308.31 | 0.1737 | 168368.8534 | https://coinmarketcap.com/currencies/stellar/ |
| ZEC | 0.3487 | 124.68 | 43.475916 | https://coinmarketcap.com/currencies/zcash/ |
| | | | $5,231,549.42 | |