UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
GBM GLOBAL HOLDING COMPANY :
LIMITED, :
 :
                                             Petitioner, :
 :
       -against- :
 :
91 INDIVIDUALS ATTACHED TO :
SCHEDULE A, :
 :
                                           Respondents. :
------------------------------------------------------------ X

**<u>ORDER GRANTING MOTION TO CONFIRM ARBITRATION AWARD</u>**

21 Civ. 6284 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

Petitioner GBM Global Holding Company Limited ("Petitioner") moves to confirm an arbitration award, rendered on May 2, 2022 against 91 Individuals named in the attached schedule (collectively "Respondents") in the amount of $5,231,549.42, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, which implements the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), and postjudgment interest, pursuant to 28 U.S.C. § 1961. (ECF No. 28). Despite having notice of the arbitral, and this, proceeding, Respondents failed to appear. Under Section 207 of the FAA, a court "shall confirm" an arbitral award falling under the New York Convention, unless the case falls within the enumerated grounds for refusing or deferring recognition or enforcement of the award. Finding no grounds to refuse or defer recognition or enforcement, the motion is granted.

Because Respondent has failed to appear or respond to the petition, and the time has passed for responding to the instant motion, I treat the petition as an unopposed motion for

1

summary judgment. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109–10 (2d Cir. 2006). The relevant facts are therefore undisputed.

Petitioner owns and operates a cryptocurrency exchange under the name "Bitmart." One of the cryptocurrencies traded on the Bitmart exchange is Bitcoin Satoshi Vision ("BSV"). In July 2021, Respondents registered accounts on the Bitmart exchange and accepted the terms of Petitioner's User Agreement, *see* ECF No. 16-4, which provides in relevant part:

> **10.3. Arbitration; Waiver of Class Action**. If we cannot resolve the dispute through the Formal Complaint Process, you and we agree that any dispute arising out of or relating to this Agreement or the BitMart Services, including, without limitation, federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation, or any other legal theory, shall be resolved through binding arbitration, on an individual basis (the "Arbitration Agreement"). . . . Arbitration shall be conducted in accordance with the American Arbitration Association's rules for arbitration of consumer-related disputes (accessible at https://www.adr.org/sites/default/files/Consumer%20Rules.pdf). This Arbitration Agreement includes, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement. All such matters shall be decided by an arbitrator and not by a court or judge.

*Id.* § 10.3. After registering their accounts, Respondents carried out a malicious "51% attack" on the BSV blockchain, and by briefly overtaking the mining power, were able to implant a trail of sham transactions that created the appearance of Respondents possessing 91,000 authentic BSV tokens. Petitioner was duped into treating the sham tokens as authentic and credited a total of 91,000 authentic BSV tokens into digital wallets linked to Respondents' accounts. Respondents immediately traded the authentic tokens, totaling in value approximately $6,070,000.00 as of July 10, 2021, for other cryptocurrencies. Although Petitioner was able to freeze some of Respondents' accounts before all authentic cryptocurrency could be emptied, approximately $5,027,000.00 was transferred onto other exchanges.

Invoking Section 10.3 of the User Agreement, Petitioner initiated an arbitration proceeding before the AAA, alleging breach of contract and fraud. Despite being given notice of the proceedings, Respondents failed to appear before the AAA. Petitioner submitted affidavits and documentary evidence in support of their claims. Based on the uncontested evidence, on May 2, 2022, the arbitrator awarded Petitioner joint and several damages for each withdrawal of cryptocurrency from a Respondent account occurring on or about July 9, 2021, with the damages to be calculated in U.S. dollars at the exchange rate prevailing as of the close of business on the day of the award. It calculated the specific cryptocurrencies (identified by ticker) and withdrawal amounts against each as follow: BSV 3.07; BTC 10.9946; ETH 218.929; USDC 296,654.277; USDT 693,721.37; XRP 3,926,159.284; ADA 130838.17; DOGE 485; ETC 0.389; HOT 29,912,899; LTC 668.499; MATIC 297,691; XEM 313.94; XLM 969,308.31; and ZEC 0.3487. The arbitrator, applying the exchange rate in effect at the close of business on that date, awarded damages totaling $5,231,549.42, with all sums to be paid within 45 days from the date of the Award. *See* ECF No. 30-1.

The Convention governs judicial confirmation of foreign arbitration awards. *See* 9 U.S.C. §§ 201–208; *see also Agility Pub. Warehousing Co. v. Supreme Foodservice GMBH*, 495 F. App'x 149, 151 (2d Cir. 2012) (summary order). Under 9 U.S.C. § 207, a party may seek to confirm a foreign arbitral award under the New York Convention if the award (1) falls under the Convention; (2) was issued within the past three years; and (3) does not fall under a relevant exception. 9 U.S.C. § 207.

Article V of the New York Convention sets forth seven explicit grounds for refusal of a foreign arbitration award. *See* New York Convention, art. V(1)–(2): (1) incapacity of the parties; (2) improper notice or inability for the respondent to present a case; (3) the award

3

does not comply with terms of the submission to arbitration or is otherwise beyond the scope of proceedings; (4) the composition of the arbitral authority was not in accordance with the parties or host country; (5) the "award has not yet become binding on the parties, or has been set aside" by another authority; (6) the subject matter of the dispute "is not capable of settlement by arbitration" under relevant law; and (7) "enforcement of the award would be contrary to public policy." *Id.*; *see also Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997); *Olin Holdings Ltd. v. State of Libya*, No. 21-CV-4150, 2022 WL 864507, at *5-6 (S.D.N.Y. Mar. 23, 2022).

Under the New York Convention, the Court's role "in reviewing a foreign arbitral award is strictly limited" and "extremely deferential." *Yusuf Ahmed Alghanim & Sons.*, 126 F.3d at 19. Courts must look to see if "'a ground for the arbitrator's decision can be inferred from the facts of the case . . . .'" *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 121 (2d Cir. 1991) (quoting *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1216 (2d Cir. 1972)). "Only 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." *D.H. Blair & Co.*, 462 F.3d at 110 (quoting *Landy Michaels Realty Corp. v. Loc. 32B-32J, Serv. Emps. Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992)).

The Final Award falls under the New York Convention because the United States is a signatory to the Convention; the Award was issued less than three years ago; and the dispute arose out of a commercial relationship between the parties. In addition, the Award meets the deferential "barely colorable justification" standard, relying on Petitioner's uncontested affidavits and documentary evidence establishing that Respondents orchestrated a cyberattack on Petitioner in order to dupe Petitioner into crediting Respondents with authentic BSV tokens, and

4

that as a result of Respondents' deceptions, Petitioner was damaged. Petitioners' motion is thus granted, and the award is confirmed.

For the reasons provided above, the petition to confirm the arbitration award is granted, with postjudgment interest from the date of this judgment. The Clerk of Court shall enter judgment and terminate the case.

SO ORDERED.

Dated:   July 13 2022
         New York, New York

ALVIN K. HELLERSTEIN
United States District Judge